### William Lingenfelter v. The State.

No. 2883.  Decided February 4, 1914.

Rehearing denied March 4, 1914.

1.—Habitual Loitering—House of Prostitution—Sufficiency of the Evidence.

Where, upon trial of habitually associating with prostitutes and loitering around a house of prostitution, the evidence showed that defendant habitually associated with prostitutes and habitually loitered in and around a house of prostitution, the conviction was sustained. Distinguishing Ellis v. State, 65 Texas Crim. Rep., 480. Davidson, Judge, dissenting.

2.—Same—Male Person—Sufficiency of the Evidence.

Where defendant was charged that he was a male person who habitually associated with prostitutes, etc., and the evidence showed that defendant worked extra at the barbershop and received a certain per cent of what he took in, and there was no question raised that he was not a male person, there was no error on this ground.

3.—Same—Charge of Court—Status of Defendant.

Where a requested charge, that the jury should only consider such testimony as bears upon the status of defendant at the time the complaint was filed, was not called for by the testimony, there was no error in refusing same.

4.—Same—Limitation—Time of Offense.

A person charged with an offense on or about a named date can be convicted of that offense at any time within the period of limitation fixed for that offense, unless he claims surprise, etc., and in the absence of such showing the court's charge was not subject to the criticism made against it on that ground.

5.—Same—Sufficiency of the Evidence.

Where, upon trial of habitually associating with prostitutes, etc., the evidence showed that the defendant associated with prostitutes as his equal, habitually visiting a house of prostitution, and eating at the table with prostitutes, he keeping his clothes at this place, and having his wash woman call there and get them, etc., the conviction was sustained.

Appeal from the County Court of McLennan. Tried below before the Hon. Walton D. Taylor.

Appeal from a conviction of habitually associating with prostitutes, etc.; penalty, a fine of $200.

The opinion states the case.

W. L. *Eason*, for appellant.—On question of insufficiency of the evidence: Ellis v. State, 65 Texas Crim. Rep., 480, 145 S. W. Rep., 339; City of San Antonio v. Salvation Army, 127 S. W. Rep., 860.

*C. E. Lane,* Assistant ˙ Attorney-General, and *Jno. B. McNamara,* county attorney, for the State.

DAVIDSON, JUDGE.—The information and complaint contain several counts; the following, however, was submitted : "The said William Lingenfelter was then and there a male person who habitually associates with prostitutes and who habitually loiters in and around houses of prostitution, against the peace and dignity of the State."

The facts show that appellant was a barber and worked at the Saint Charles barbershop and received sixty per cent of the money he took in for his wages. The State's case is shown, substantially, by the following evidence: Minnie Lee Jones said she lived at Miss Bell Pence's until about a week prior to her testifying, when she moved away. That she had seen the defendant in the house at night and in the morning saw him eat breakfast there several times. She lived at this house for five or six weeks; did not see defendant every day, and the testimony she gave is confined to the time she was staying at Bell Pence's house. She did not know where defendant slept, but had seen him in Bell Pence's bed. She said she understood defendant was working at the Saint Charles barbershop. She testified also that she had seen defendant with a book at Miss Bell Pence's place, and defendant had told her what she owed. This was a day book. Miss Belle Pence is the keeper of a house of prostitution, and girls board with her and go to bed with men for money and have sexual intercourse with them. She also states that she had seen parties go to Miss Bell Pence's for defendant's laundry. She testifies as follows: "I had a racket with Miss Bell. She came in drunk that night and jumped on us. It has been a week since I left Miss Bell's. I went from there to 312 North Second Street. I have forgotten the landlady's name. I have been a prostitute nearly two years. I have been traveling for a company. I have been a show girl. The last time I saw defendant down there was the night before they went fishing. I could not say what date it was. I can not say any certain days that I saw defendant eat breakfast. Alice and Vera were there when defendant ate with us. Willie was there also." Irene May testified she had known the defendant for about five months, and she also at the time lived at Miss Bell Pence's house of prostitution. She moved there in February, and lived and was there until about three weeks before testifying. During the time she was there she saw defendant around Miss Bell's house; would see him often; that he would go to Miss Bell's room, and she had seen defendant eat there a time or two she believed. She used morphine, she says, for a while, given her by Dr. Smith; that she had been a prostitute for about four years. At the time she lived with Miss Bell defendant was working at the Saint Charles barbershop. Grace Thompson testified she had known Miss Bell for about five years; got acquainted with defendant last fall at the Cotton Palace. That she had lived at Miss Bell's until three months before the trial and had seen defendant there. She said she was only testifying what she had

observed at Bell Pence's before she left there; that she lived in the Waco reservation for nearly two years. Lee Huff testified he was a police officer, and had seen defendant in the reservation, but not many times, and had seen him also at Bell Pence's house. The time he speaks of, he says, covers a good many months, running back to last fall. Bell Pence's house was a bawdy house. He said he had been in the house frequently when he did not see the defendant there. C. P. Carlton testified he was a police officer, and had seen defendant in the reservation three or four times; seen him undress in a room. Alice Gordon testified to practically to the same facts as did Vera Gordon, that they lived at Bell Pence's house, and had been living there for five weeks, and that it was the first bawdy house in which they had ever lived, and had been engaged in this business nine weeks; had seen defendant at Miss Bell's house just twice; never saw defendant eat there; that all eat at the same time, and if defendant had been there they would have seen him; that the board was paid to Miss Bell and no one else; that she had had occasion to sleep with Miss Bell; that she knew Vera Gordon, was related to her; that in case either of them had all night company, the other one slept with Miss Bell. She said she had never seen defendant in Miss Bell's room; that she saw the defendant there the first of the month and one time before; did not know defendant before that time; he did not stay there that night. While he was there this witness saw him talking to Miss Bell. Vera Gordon testified to practically the same facts. She stated she slept with Miss Bell sometimes. Billy Smith testified he lived at 822 Austin Street; and had lived there over a year; was a married man, and he and his family lived together at 822 Austin Street. That he knows defendant; he rooms at his house; that "defendant's room is the first one as you enter my house to the right." That he had been there several months; keeps his trunk there. Ed Fuller testified he ran the Saint Charles barbershop; that it adjoins the saloon; that defendant works in the barbershop; that he knew nothing about defendant going to the reservation. John Swafford testified appellant worked at Saint Charles barbershop; that he, witness, owned half interest in the shop. This is practically the case on the facts.

Appellant contends the State failed to make a case, first, because there is no evidence defendant was a male person, and, second, it does not prove the allegations contained in the information, that he habitually associated with prostitutes and habitually loiters in and around houses of prostitution. The only evidence in the entire record showing appellant was a male person is found in the following language: "Defendant gets sixty per cent of what he takes in." This was referring to work at the barbershop as a barber. We would hardly feel justified in reversing the case because the evidence does not show he is a man, with this statment in the record. We would suggest that the prosecution should prove without leaving to inference material facts in a case when they have the witnesses on the stand by whom they can prove such facts. Circumstantial evidence ought not to be resorted to when positive evi-

dence ,is before the court. It would have been no trouble if defendant was in fact a man for the State's witnesses to testify to the fact that he was a man.

It is contended the evidence is not sufficient to sustain the contention that appellant habitually associated with prostitutes and habitually loiters in and around houses of prostitution. We believe the State has not met these requirements of the statute. In the case of Ellis v. State, 65 Texas Crim. Rep., 480, 145 S. W. Rep., 339, this court, speaking through Judge Harper, said: "We hardly think the evidence would support the conviction. The statute was intended to reach a class of persons who associated with prostitutes as their equals, or who associated with them in public, and was not intended to make a vagrant of a person who, at night, went occasionally to the room of a woman of loose morals, and yet who at no other time was seen in her company. The word 'habitually' has a definite and fixed meaning in law, and in saying 'habitually associated with prostitutes' it was intended to reach a class of persons who made a habit of associating with them, either in public or private, and going to their room occasionally at night, even though it was for an immoral purpose, would not bring one within the definition of this offense." Now, the State's case is, they had seen him about the house of Miss Bell Pence's, a house of prostitution, and the State's evidence goes to show perhaps he had been seen a time or two in her bed, though this is practically denied by inmates of the house, Alice and Vera Gordon. They say they were in the habit of sleeping with Miss Bell. Appellant, under the State's view of the case, was at this place on several occasions and ate breakfast they say. We are of opinion under the decision in the Ellis case, supra, this is not sufficient. Under that authority the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

### ON REHEARING.

### February 4, 1914.

HARPER, JUDGE.—On a former day of this term this case was reversed, but on a mature deliberation and study of the testimony we have arrived at the conclusion that if the testimony offered by the State should be believed to be true, it would support the verdict, and the rehearing should be granted, and the judgment affirmed.

Minnie Lee Jones testified: "I did live at Miss Bell Pence's until about a week ago, when I moved away. I am acquainted with the defendant, Lingenfelter. I have seen the defendant in the house there at night and in the morning. I have seen the defendant at breakfast at the table there quite a number of times. It was breakfast for us. It was between eleven and twelve o'clock. I lived at Bell's Pence's five or six weeks. I did not see defendant there every morning. I did see defendant there most of the mornings during that time. My testimony as given is confined to the time that I was staying at Bell Pence's. I

do not know where defendant slept. I have seen defendant in Miss Bell's bed. I have heard defendant tell certain parties to make themselves at home. I do not know who these friends were. I understood that the defendant was working at the Saint Charles barbershop two or three weeks ago. I have seen the defendant with the book at Miss Bell's place, and defendant has told me what I owed. That was a day book. I have turned some money over to the defendant and some to Miss Bell. Miss Bell is a keeper of a house of prostitution, and girls board with her. The girls down there go to bed with men for money, and have sexual intercourse with them. The defendant would eat at the same table with the girls and with Miss Bell. I have seen them come to Miss Bell's room for the defendant's laundry."

Irene May testified she was a prostitute and lived in Bell Pence's house of prostitution for about five months; that she knew appellant, and saw him there nearly every night during the time she stayed there, and that he would go to Miss Pence's room; that she had seen appellant eat breakfast there.

Grace Thompson testified that she had lived at Bell Pence's and during the time she was there she saw defendant in this house frequently, and would see him there at night and at breakfast. That when she saw him he generally was in Miss Bell's room. Alice Gordon testified she went automobile riding with appellant, admitting she was a prostitute. Lee Huff testified that Bell Pence's house was a bawdy house, and he had seen appellant at this house and in different parts of the house. That he had seen him in the early morning before daylight, and also about 8 o'clock in the morning. C. P. Carlton said he had seen him down there undressed.

This was the testimony offered by the State to show that appellant habitually associated with prostitutes and habitually loitered in and around houses of prostitution, and we believe it would justify a jury in so finding.

We adhere to the holding announced in Ellis v. State, 65 Texas Crim. Rep., 480, 145 S. W. Rep., 339, but do not think the evidence brings this case within the rule there announced. He was not "a man who at night time went occasionally to the room of a woman of loose morals," but in this case it appears that he was sleeping in this house of prostitution; eating meals with the prostitutes and associating with them as his equal. He apparently was bookkeeper, and in one instance collected the money due the madam by the girls. It is true that Billy Smith testified that appellant rented a room at this house, and had his trunk there, but on cross-examination said he did not know where appellant slept, and would not say that he had ever slept in the room rented from him. Ed Fuller testified he had seen appellant at work in Saint Charles barbershop, but one of the owners of the barbershop testified appellant did not work there regularly, but worked extra and when he worked got 60 per cent of what he took in. But take all the evidence

adduced on the trial, and we are of the opinion that the rehearing should. be granted, and it is so ordered, and the case is now affirmed.

*Affirmed.*

DAVIDSON, JUDGE (dissenting).—I see no reason for changing the opinion in this case. I do not deem it worth while to write further, but adhere to what I had to say in the original opinion, and, therefore, dissent.

### ON REHEARING.

### March 4, 1914.

HARPER, JUDGE.—Appellant has now filed a motion asking a rehearing. We have carefully read his motion and the argument thereon, and being still of the opinion the evidence supports the verdict, we would not write further, only that appellant insists that we pass on some other questions raised, the first being that there is no evidence showing that defendant is a male person, and the court should have instructed a verdict of not guilty. We have read the record again, and while he is generally termed "defendant" in the statement of facts, yet Mr. Swafford testified that defendant worked extra at the barbershop and received 60 per cent of what *he* took in, and no question that he was a male person. is raised by the testimony adduced on the trial.

The charge requested that "the jury would only consider such testimony as bears upon the status of the defendant at the time the complaint was filed" was not called for by the testimony. The whole testimony establishes but one status during the entire period of time to which the testimony related, and related to a time charged in the information.

The law in this State is that a person charged with an offense on or about a named date, can be convicted of that offense at any time within the period of limitation fixed for that offense, unless a person on trial should claim that the time fixed by the evidence was so different to that charged in the information as to be ground for surprise, and he should for that reason ask for a postponement that he might obtain evidence to meet the charge as made by the testimony. There is no contention that appellant was surprised by the testimony, or that he could at a future trial make any more effective defense, and under such circumstances. the charge of the court is not subject to the criticism contained in appellant's bill of exception No. 4.

Appellant insists that the evidence in this case brings him within the rule announced in the Ellis case, 65 Texas Crim. Rep., 480, 145 S. W. Rep., 339, wherein this court said: "The statute was intended to reach a class of persons who associated with prostitutes as their equals, or who associated with them in public, and was not intended to make a vagrant of a person who, at night, went occasionally to the room of a woman of loose morals, and yet at no other time was seen in her company." This is a correct construction of the statute, and the testimony in this case

would show that appellant is a person who associated with the prostitutes as his equal, habitually visiting this place both day and night, eating at the table with them, keeping his clothes at this place, and having his washwoman call there and get them, and if there ever will be a case that can be brought within the provisions of the Code this is one of them, as shown by the testimony hereinbefore copied.

The motion for rehearing is overruled.

*Overruled.*